# Appeal of Barry et al.

A testator devised his real estate to his executors in trust to convert the same into personalty and the net proceeds thereof to "eventually pay and turn over unto the permanent and continuing trustee of my residuary estate," who should invest the same and out of the proceeds thereof and of his entire residuary estate pay certain annuities, amounting to $85,000. The will further provided: "On the settlement of the accounts of said executors, from time to time, whatever balances may be found in their hands, shall be paid over by them, the said executors, to the said trustee for the uses and purposes hereinafter expressed; *provided,* however, that during the first year after my decease, and until the settlement of their first account, and until the said executors shall turn over sufficient funds to the said trustee, to enable the latter to pay out of the income the annuities hereinafter designated, for my wife and children, the said executors shall pay the said several annuities in the way and manner hereinafter provided, but the duty of such executors in respect to said annuities shall cease when they have placed the trustee in possession of sufficient funds for the income thereof to enable the latter to assume the payment thereof."

*Held,* that until the executors had personalty in their hands sufficient to pay all the annuities in full, they could not be ordered to pay any portion of the accumulated personalty to the trustee.

March 28th 1883. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, GREEN and CLARK, JJ. STERRETT, J., absent.

APPEAL from the Orphans' Court of *Philadelphia county :* Of January Term 1883, No. 271.

This was an appeal by Annie H. Barry, Alice McN. Eisenbrey, and Clara S. Durant, from a decree of the Orphans' Court dismissing their exceptions to, and confirming the adjudication upon the eighth account of Sarah Harrison, Theodore L. Harrison, and James L. Claghorn, executors of Joseph Harrison, Jr., deceased.

The facts were as follows : Joseph Harrison died in March 1874, leaving a large estate, both real and personal, and a will, the material provisions of which are as follows : After devising all his real estate to his executors " in trust that the same shall be by them sold, disposed of and converted into money and personalty," the seventh item provides :

" It is my will and direction that my executors shall eventually pay and turn over the whole net capital of my estate, including all the net proceeds to be derived from time to time from the sales of all my real estate, after the latter shall have been by my said executors sold and converted into personalty, unto the permanent and continuing trustee of my residuary estate, hereinafter designated, and that on the settlement of the accounts of said executors from time to time, whatever balances may be found in their hands (excepting what may be required

for the payment of taxes and charges on my unimproved real estate, and other expenses likely to arise on the estate in the hands of such executors, for all which the latter shall retain a contingent fund in their hands sufficient, in their judgment, for those purposes) shall be paid over by them, the said executors, to the said trustee for the uses and purposes hereinafter expressed; provided, however, that during the first year after my decease, and until the settlement of their first account, and until the said executors shall turn over sufficient funds to the said trustee, to enable the latter to pay out of the income the annuities hereinafter designated, for my wife and children, the said executors shall pay the said several annuities in the way and manner hereinafter provided, but the duty of such executors in respect to said annuities shall cease when they have placed the trustee in possession of sufficient funds for the income thereof to enable the latter to assume the payment thereof.

"Item VIII. All the rest, residue, and remainder of my estate, including the net proceeds of all my real estate, I do will and direct that my executors pay, assign, and deliver over unto The Philadelphia Trust, Safe Deposit, and Insurance Company, whom I constitute and appoint the permanent and continuing trustee of my residuary estate, and to whom I give and bequeath the same, in trust, for the several uses and purposes hereinafter expressed and declared, that is to say, in trust, to keep the capital thereof invested in ground-rents, mortgages, and such other securities and loans as may be made legal investments for trustees, at interest . . . . and after defraying the proper legal charges thereon, in trust, to pay out of such net interest and income the seven several annuities or yearly sums following, to wit, one of twenty-five thousand dollars to my wife, Sarah Harrison, during her natural life, and one other of ten thousand dollars to each of my six children, during his or her natural life respectively, namely, to William Henry Harrison, to Annie H. Barry (wife of Lewellyn F. Barry), to Alice McNeil Eisenbrey (wife of William H. Eisenbrey), to Marie Olga Norris (wife of Thaddeus Norris, junior), to Theodore Leland Harrison, and to Clara Elizabeth Harrison. . . .

" And if it shall happen in any one year, that the net income of my residuary estate shall not suffice to pay the whole of said annuities in full (a contingency I do not anticipate), then my wife's said annuity shall be paid in full, and the residue of the net income of such a year shall be divided among my children equally, subject to the restrictions and conditions above expressed; and in any one year when the net yearly income of my residuary estate shall exceed the aggregate of said annuities, to wit, the sum of eighty-five thousand dollars, I direct the excess of said net income to be divided pro rata among my

said wife and children, in proportion to the said annuities so provided for them."

From time to time the executors sold large portions of the real estate, which resulted in the accumulation in their hands of personal estate, amounting, with that of which the testator died possessed, to upwards of $1,000,000. At the time of the present adjudication considerable real estate still remains to be sold. The fund thus accumulated was insufficient to pay the annuities mentioned in *item* VIII. in full.

At the adjudication, the Philadelphia Trust, Safe Deposit & Insurance Company claimed that so much of the principal as had been accumulated for the purpose of paying the annuities should be awarded to it, as residuary trustee. The executors contended that the principal should not be so awarded to the eventual trustee, until enough personalty had been accumulated to pay *all* the said annuities in full, until which time it should remain in their (the executors') hands.

The auditing judge (ASHMAN, J.) reported as follows:

" The payment of the annuities by the executors seems to have been a temporary expedient, which was planned by the testator to prevent the partial failure to the annuitants, which might otherwise have happened. The trustees are restricted to the income of the residuary estate as the fund from which this charge is to be met; and it is doubtful whether if all the converted capital should be turned over to the trustees, the annuitants, in any year in which a deficiency might occur, could resort to the executors for payment of the balance. It would seem safer, therefore, to the interests of the legatees to leave the payment of their portions in the hands of the executors, upon whom no such restrictions have been placed. While the testator evidently supposed that enough of his estate would be very speedily converted to constitute an ample fund for the use of the trustees, he also provided for any length of delay which might ensue. Three several provisos, in regular order, fix a lengthening time for the payments by the executors; they are to pay during the first year after the death; then, if sufficient funds have not accumulated, until the settlement of their first account; and then, if the deficiency continues, until they shall turn over sufficient funds to the trustee. This last proviso is certainly large enough to cover the delay which has now occurred, and any possible doubt is removed by the words which immediately follow: 'The duty of said executors in respect to said annuities shall cease when they have placed the trustee in possession of sufficient funds for the income thereof to enable the latter to assume the payment.' This is only another form of saying that their duty shall continue until then.

" It may be added that the obligation imposed in the earlier

part of the eighth clause upon the executors to pay over the balances in their hands from time to time on the settlement of their accounts is intended to take effect only after the directions in the provisos shall have been complied with."

He, therefore, awarded the principal of the personal estate to the accountants. Exceptions filed to this adjudication, by Mrs. Eisenbrey, Mrs. Durant, and Mrs. Barry were dismissed by the court, and the report confirmed. The exceptants thereupon took this appeal, assigning for error the action of the court.

*John G. Johnson,* for the appellants.—The duty of paying the annuities is expressly charged upon the trustees, and is only temporarily imposed upon the executors by the proviso to item VII., but for which the latter might refuse to pay any part thereof. The testator knew that his executors might not be able, at once, to deliver sufficient funds to enable the trustees to pay the whole, and, therefore, in order to prevent a partial failure, he imposed a duty upon the former to make good the deficit out of the unconverted estate. His intention, however, would be defeated, not furthered, by construing a proviso, meant only to insure such payment, in such way as will violate the expressed direction to pay over proceeds from time to time by compelling the retention of everything until the executors shall be able to turn over enough to insure thereafter an income equivalent to the aggregate of the annuities. We carry out the entire intent by saying that until funds enough have been paid over to the trustees to meet the annuities, there shall be a duty upon the executors to appropriate so much of the income of the unconverted estate as shall be needed to supply the deficiency. The will does not say that until the executors have in hand, ready to pay over, sufficient funds, etc., but "until they shall turn over sufficient funds," which is consistent with the positive direction to pay over from time to time.

*J. B. Townsend,* for the appellee.

The opinion of the court was delivered April 16th 1883.

PER CURIAM. This contention is to be decided by the intention of the testator as gathered from the whole will. He provided for the payment of seven annuities, amounting in the aggregate to a large sum. He directed substantially that until the executors should turn over a sufficient fund to the trustee to enable it to pay the annuities out of the income, the executors should continue to pay them. The executors have not yet converted the real estate into personalty so as to have in their hands a fund sufficient for that purpose. It manifestly was

not the design of the testator that the executors and trustee, should, at the same time, each be paying a part of the annuities. Until the income of the fund became sufficient to pay all the annuities, the executors were to pay them. When sufficient, the trustee must pay them. Hence the testator directs the executors to "eventually pay and turn over" to the trustee the whole net capital of his estate after it shall have been sold and converted into personalty. Until they can pay over to the trustee a fund large enough to produce an income sufficient to pay the annuities, a compulsory order to pay over is premature. There is no allegation of any mismanagement of the fund by the executors, either in delaying to convert the land, or in neglecting to properly invest the funds in their hands.

We see no error in the decree.

Decree affirmed and appeal dismissed at the costs of the appellants.